UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re

    KELLY RUPP                                               Case No. 08-12279 K

                            Debtor
-------------------------------------------------------------------

OPINION AND ORDER

The question presented to the Court is whether a debtor who owns a two-family home may claim a homestead exemption in the entire home despite the fact that she rents out one half and lives in the other half.[1]

In various parts of the country such homes might be referred to as duplexes, doubles, or simply two-family homes. Some, such as the home involved in the case of *In re Brizida,* 276 B.R. 316 (Bankr. D. Mass., 2002), consist of over and under flats. In this case, the units are side by side, and have been assigned different street addresses by the United States Postal Service, even though there is only one parcel of land for property tax and mortgage purposes.

The holder of a judgment lien has objected to the Debtor's claim of exemption, seeking to pre empt a § 522(f) motion that would avoid the judgment lien as to the entire parcel. The complete parcel has a current value of $83,000 and a mortgage of $56,836.68. Given the $50,000 homestead exemption permitted under New York Law, the portion that the Debtor occupies as her residence is clearly exempt. The size of the judgment lien is nearly $68,000. If

---

[1] See the excellent, thorough discussion of a similar issue in *In re Springmann*, 328 B.R. 251(Bankr. D. Dist. Col.), wherein Judge Teel examines the homestead law of numerous states.

the claim of exemption on the non-occupied portion is disallowed, the judgment would be unavoidable to the extent of approximately $13,000, to wit, half of the $26,000 equity in the property.

The applicable provision of New York Law states: "real property exempt from application to the satisfaction of money judgments [includes] . . . property of one of the following types, not exceeding $50,000 in value above liens and encumbrances, owned and occupied as a principal residence . . . (1) a lot of land with a dwelling thereon, (2) shares of stock in a cooperative apartment corporation, (3) units of a condominium apartment, or (4) a mobile home." [New York C.P.L.R. § 5206(a).]

Before addressing informative case law on the issue at hand, it is important to note that in August of 2005 the State of New York increased the homestead exemption from $10,000 to $50,000 per owner. Consequently, the "amount in controversy" in such a dispute was far less prior to that date, from a debtor's point of view.

With that in mind, we examine the first of the cases cited by the judgment creditor. That is the case of *In re Hager*, 74 B.R. 198 (Bankr. N.D.N.Y., 1987). In that case, the debtor's home contained a designated portion for business purposes. He was a chiropractor and also a part-time Baptist Minister. One of the questions presented to the Court was the question of whether "the property was used as Debtors' principal residence."

The Court stated that "the property was used by Debtor as his principal residence, at the time of his filing, there being no evidence presented . . . supporting a contrary claim. However, it is likewise true that Debtor specifically designed the building to serve not only as

his home, but also as the situs for the transaction of his business." The Court prorated the square footage of the building, and the equity therein, and concluded that 13.08% of the building's total square footage had a primarily a business purpose, not entitled to exemption. Thus, the judgment creditor's lien was held to be valid to the extent of $1,250.98. (13.08% of the otherwise exempt equity.)

The judgment creditor appealed the decision on several unrelated grounds, but the Bankruptcy Court's decision was affirmed. The Debtor did not cross appeal over the fact that his exemption had been reduced by $1250.98. *In re Hager*, 90 B.R. 584 (N.D.N.Y. 1988).

The next case cited by the judgment creditor is *In re Mastowski*, 135 B.R. 1 (Bankr. W.D.N.Y. 1992), in which my former colleague, the late Hon. Judge Edward D. Hayes, allowed the Debtor to exempt the entire of a four-unit property, of which the Debtor rented out three units. On appeal, the United States District Court of this district purportedly reversed the Bankruptcy Court decision, the basis of the District Court decision in *In re Hager*.[2]

Other cases cited by the judgment creditor do not address the multi-unit issue.

DISCUSSION

Firstly, as to the *Hager* decision, it is not at all clear that the debtor in that case opposed a prorating of the exemption claim. There is nothing in either the Bankruptcy Court's decision or the District Court's decision to suggest that he did. Rather, it is possible that when

---

[2] The judgment creditor's motion in this case states that the District Court of this district modified the Bankruptcy Court decision of this district "by upholding the Order granting an exemption in the rest of the equity." This Court takes that to be a typographical error, and believes that the judgment creditor intended to state that the decision was reversed, not upheld, based on what this Court has heard at oral argument.

the allowable exemption was only $10,000, the debtor had no meaningful incentive to argue the issue, and instead simply permitted the Bankruptcy Court to decide the percentage to be applied in computing the reduction. After all, the outcome was that the judgment lien would be allowed in the amount of only $1250.

Assuming, however, that the Debtor did vigorously oppose such a reduction, the decision of the District Court in the Northern District of New York is not binding on this Court.

Secondly, the judgment creditor in this case argues that the decision of the District Court of this district (*Mastowski*), in relying on the District Court decision in *Hager*, has bound this Court. There is no doubt that this Court is among the substantial minority of bankruptcy courts that believe that the ruling of a single district judge binds all bankruptcy judges in the district until a different district judge of the same district rules the other way. (See *F.C.C. National Bank v. Reid (In re Reid),* 237 B.R. 577 (Bankr. W.D.N.Y. 1999); *Irr Supply Centers, Inc. v. Phipps (In re Phipps)*, 217 B.R. 427 (Bankr. W.D.N.Y. 1998), and the Law Review article by H. Michael Muniz, Anarchy or Anglo-American Jurisprudence, 76 - Dec. Fla. B.J. (2002)   However, as explained in *Reid* and *Phipps*, the binding effect of the decision of a district judge of this district upon all bankruptcy judges of this district depends on whether the district judge published the decision. The rationale for that proviso, first articulated by this writer in the case of *In re Phipps,* was the fact that a bankruptcy judge cannot presume to know the holding of a district court judge of this district if the district judge's holding has not been published. Today, this writer extends the rationale on the basis of his own experience in making the choice regarding whether to publish or not to publish a decision. The reasons that

judges (or at least this writer) might choose not to publish a decision are numerous.

They include a judge's belief that a holding contributes nothing to scholarship on the issue at the Bar, but rather simply adopts well-established law; the fact that time pressures upon the judge, in some cases, preclude the type of thorough exposition of the case that would make its full meaning understandable as a precedent; and (most importantly for present purposes) uncertainty as to whether the quality of advocacy in the case is such as to cause the judge to be sure that it should have precedential value. This last point permits the very same judge to reach a different conclusion where better arguments have been presented.[3]

Consequently, this writer does not believe this Court to be bound by the decision of the district judge in the *Mastowski* case.

The Court today rules that a debtor who owns a two-family home, and occupies half of it as her homestead, renting out the other half, may exempt the entire property.[4] The Court so rules for a number of reasons. First, as explained in the case of *In re Brunson*, 201 B.R. 351 (Bankr. W.D.N.Y. 1996), there are some localities (Buffalo, New York, and its near suburbs included) in which the dream of home ownership can only be realized by people who are willing to purchase a double: the rental income for the second unit is the only thing that makes ownership affordable for the purchaser. This is not speculation. It is a fact known to this writer

---

[3] See, for example, this writer's change of position regarding the exemptibility of a certain type of deferred compensation plan. Having rejected the claim of exemption in the case of *In re Johnson*, 254 B.R. 786 (Bankr. W.D.N.Y. 2000), this writer found that new arguments presented in an identical situation were persuasive whereas the earlier arguments were not. *In re Maurer*, 268 B.R. 335 (Bankr. W.D.N.Y. 2001).

[4] Although the *Springmann* Court would reach the contrary conclusion (based on dictum expressed by that Court), the Washington, D.C. homestead statute differs from that of New York in that there is no dollar amount on the exemption there - - a fact which Judge Teel emphasized in expressing the dictum.

as a former real estate practitioner and as a friend or acquaintance of a number of people who got their start in home ownership in just such a way.  A substantial (perhaps unique) percentage of Buffalo-area homes are free-standing, side-by-side doubles, compared to other urban areas.

Secondly, at least one other bankruptcy court has properly analyzed the New York State Homestead Exemption and comparable homestead exemptions in other jurisdictions.  Thus, for example, the Bankruptcy Court for the Eastern District of New York stated in the case of *In re Vizentinis*, 175 B.R. 824 (Bankr. E.D.N.Y. 1994) that that debtor was properly entitled to exempt a building with four apartments (and four different post office addresses), where she occupied one as her principal residence.[5]  In that case, the Court characterized the judgment creditor's argument as one which would read into the language of New York C.P.L.R. § 5206, a word that does not there exist.  Again, the statute states "owned and occupied as a principal residence."  The argument of the judgment creditor there and here asks that the court pretend that the statute reads "owned and <u>exclusively</u> occupied as a principal residence," or "owned and occupied <u>exclusively</u> as a principal residence.  The court in that case stated "we perceive neither need nor authority to so rewrite the statute."

That court went further by examining some of the complications of such a contrived reading.  Though not entirely clear, it appears that the four-family dwelling at issue there was one in which the four apartments shared a common entrance, etc., unlike the case presently at bar, and the court rhetorically asked how the judgment creditor would execute upon

---

[5]As noted below, this Court leaves to another day the question of whether this Court would extend its holding today - - involving a two-family dwelling - - to a building consisting of three or more dwelling units.

the three units as to which it would seek lien enforcement.  "How, for instance, would a purchaser obtain access to units without direct access to the exterior.  Would such purchaser obtain title to the attic, hallways and basement?  Who would supply heat to the building; if the purchaser, [then] what would be the debtor's obligation to share in its cost.  Under such circumstances, the likelihood of anyone purchasing at an execution sale of one or more of those [non-exempt] units would be so remote as to create for the debtor a *de facto* exemption in the entire premises."[6]

Here, the Court presumes that each of the two units has a separate entrance, and the Court will even presume (without knowing) that each of the two units is self-sufficient as to heat, plumbing, electricity, etc.[7]

In Buffalo, New York and its environs, thousands of "doubles" are not "row houses."  But for the existence of separate entryways, they would be indistinguishable from single family homes sitting on landscaped lots, and with a single driveway (with a variety of arrangements for sharing parking privileges, including the shifting around of vehicles in the driveway as among the owner and the tenant.)  Consequently, the *Vizentinis* court's observation that the requested interpretation of the exemption "would constitute the creation of a *de facto* condominium" is as applicable to the case of side-by-side units (in many instances) as it was to a

---

[6] Though the present Court acknowledges that such issues can be addressed (by easements, etc.) in an action for Partition under New York law, it is not so clear that a judgment lien creditor who forecloses the judgment lien may petition for partition.

[7] These presumptions might be directly contrary to fact.  In some cases that have come before the Court, doubles were created from single family homes, and the two units share a heating system, plumbing, and other systems;  they might not even have separate metering where the cost of utilities is included in the tenant's rent.

case in which the four units shared a common entrance, hallways, etc. If the judgment creditor were permitted to execute on the rental unit, by what mechanism would there be created shared responsibility for a common roof or foundation, the surrounding yard, a single-wide driveway (some of the local communities do not permit overnight on-street parking some of the time, or during snow emergencies) or metering if the water, heat, or electricity have not previously been separated? Additionally, many doubles in the Buffalo area offer in-ground or aboveground swimming pools which the tenant is permitted to share. By what mechanism in a judgment lien foreclosure sale is that matter to be addressed, including the property tax attributes thereof?[8]

To be sure, some "doubles" do not present some, or any, of these problems. But it does not seem to this Court that there should be a dispositive difference between an inner-city double with no grass or pool as opposed to a suburban double possessed of all of the problems that the Court has described. Not only could such a dispositive difference be discriminatory in Buffalo, where inner-city property is usually less valuable than suburban property and is owned by people of lesser means, it would also belie the overriding consideration, expressed above, that for a great number of people in this community, home ownership, a "homestead," is available only to those who will enjoy the rental income that the double provides.[9]

---

[8] See also *In re McCambry*, 327 B.R. 469 (Bankr. D. Kansas 2005), where the same or similar factors led to the same conclusion under Kansas Law.

[9] To the extent, if any, that one might argue that there is always a single family dwelling available in the inner city that is as affordable to a buyer as a double in a suburb, see this Court's discussion in *In re LaSota*, 351 B.R. 56 (Bankr. W.D.N.Y.2006), and Elizabeth Warren and Amelia Warren Tyagi, "The Two Income Trap: Why Middle-Class Mothers and Fathers Are Going Broke." (Basic Books 2003), explaining, among other things, the understandable and completely-defensible decision by parents, for example, that making their home within the limits of one school district rather than another, or within their parish, or close to their chosen church school, is a moral imperative in the rearing of their children.

This Court leaves to another day the type of situation presented in the case of *In re Mirulla*, 163 B.R. 910 (Bankr. D.N.H. 1994), in which the Debtor lived in a motel that he owned, and occupied only five of thirty-two motel units as his homestead.

## CONCLUSION

The judgment lienor's objection to the Debtor's claim of exemption is overruled. The exemption will be allowed as to the entire property.

SO ORDERED.

Dated:     Buffalo, New York
           September 26, 2008

                                         s/Michael J. Kaplan
                                         _____
                                         U.S.B.J.